IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H. JEROME RAINES, SR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Civil Action No. 2:14-cv-01685-LPL |
| | ) ) | Magistrate Judge Lisa Pupo Lenihan |
| WILLIAM SHOUPPE, Warden, JENN MONZA, Classification, and KIM MATTHEWS, Work-Release Coordinator, | ) ) ) ) | ECF No. 13 |
| Defendants. | ) ) | |

# REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss (ECF No. 13) filed by Defendants William Shouppe, Jenn Monza, and Kim Matthews, be granted.

II. **REPORT**

A. FACTS

Plaintiff H. Jerome Raines, Sr. ("Plaintiff") was, at the time of the filing of the Complaint, a convicted inmate, serving a 180-day sentence at the Butler County Jail. (Compl., ECF No. 3 at 1). Plaintiff states that he was denied work release status by Defendant jail officials, including Warden William Shouppe, Classification Official Jenn Monza, and Work Release Coordinator Kim Matthews, (collectively "Defendants") "for no good cause," despite the fact that he had a "court-order" granting him work release status. *Id*. at 1-2. Plaintiff claims that this denial was a violation of his constitutional rights under the Fourth, Sixth, Eighth, and

1

Fourteenth Amendments to the United States Constitution.[1] Plaintiff asks that he be "released immediately" and be compensated for "wrongful imprisonment and being denied work-release and loss of work wages." *Id*. at 3.

Presently before the Court is the Motion to Dismiss the Complaint under Federal Rule of Procedure 12(b)(6). (ECF No. 13). On April 20, 2015 The Court ordered plaintiff to file a response to the motion to dismiss no later than May 19, 2015. That order was returned to the court on June 2, 2015 indicating that plaintiff had been released from his address of record, the Beaver County Jail. On July 23, 2015, the court filed a Recommendation that the action be dismissed for failure to prosecute. The order was mailed to plaintiff at both his home address and the Beaver County Jail. ECf No. 17. On August 10, 2015 the Court received a document from the plaintiff stating that he still resides at 860 Grove Ave. in New Brighton, Pennsylvania however he is currently housed at the Beaver County Jail. He states that he is "ready to defend his action …" ECF No. 18. Therefore, the Recommendation to dismiss for failure to prosecute was vacated and plaintiff was ordered to file a response to the Motion to Dismiss no later than September 12, 2015. As of this date, no response has been filed.

B.  LEGAL STANDARD

PRO SE PLEADINGS

Because Plaintiff's Complaint has been filed without counsel, the Court must liberally construe the factual allegations presented within. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court should "'apply the applicable law, irrespective of whether a pro se litigant has

---

[1] The Court notes that Plaintiff is invoking the protections of all of the listed Amendments. In considering the relevancy of each, the Court finds that only the Fourteenth Amendment applies in this case.

mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). Federal Rule of Civil Procedure 8(e) requires that pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

MOTION TO DISMISS

The United States Court of Appeals for the Third Circuit has adopted the two-part analysis provided in *Fowler v. UPMC Shadyside* when deciding on a Rule 12(b)(6) Motion to Dismiss. 578 F.3d 203, 210 (3d. Cir. 2009). The first prong of this analysis requires that the district court "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. The pleading does not have to establish the elements of a *prima facie* case, *Id*. at 213, but must present facts that "show" that the plaintiff is entitled to relief without the need to rely on legal conclusions. *Id*. at 211.

C. ANALYSIS

PROTECTED LIBERTY INTEREST IN WORK RELEASE

Section 1983 of the Civil Rights Act provides a civil cause of action for individuals who have been deprived of any "rights, privileges, or immunities secured by the Constitution and laws" by those acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." 42 U.S.C. § 1983. The statutory text provides two elements the plaintiff must show to establish a *prima facie* case: (1) that the individual was deprived of rights, privileges, or immunities provided by the Constitution or by U.S. law; and (2) that the person who caused such deprivation was acting under color of state law. *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (quoting *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir. 1993)).

3

Where a plaintiff claims violation of procedural due process, the claim relies upon the deprivation, by a state actor, "of a constitutionally protected property or liberty interest." *Id*. at 1256.

"Protected liberty interests 'arise either from the Due Process Clause or from state-created statutory entitlement." *Powell v. Weiss*, 757 F.3d 338 (3d Cir. 2014) (quoting *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)). The Due Process Clause of the Fourteenth Amendment provides that the state shall not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Individual states can also create their own liberty interests, protected by the Due Process Clause, under certain circumstances. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

DUE PROCESS LIBERTY INTEREST

According to the Supreme Court in *Montanye v. Haymes*, the treatment of a prisoner does not require a due process inquiry where "the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution." 427 U.S. 236, 242 (1976). Due process is only implicated where "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Powell*, 757 F.3d at 342 (quoting *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010)); s*ee also Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("We reject at the outset the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause."); *Asquith v. Dep't of Corr.*, 186 F.3d 407, 410 (3d Cir. 1999) (finding that prisoners have no

protected liberty interest under the Due Process Clause "in particular modes, places or features of confinement or custody.").

Defendants in their brief rely on the assertion that *Asquith* categorically denies the possibility of a protectable liberty interest in work release status. (ECF No. 14 at 3). This reading, however, ignores the fact that the court in *Asquith* acknowledged that inmates who are released from institutional confinement may have a protected liberty interest in their continued freedom. 186 F.3d at 410. The court found, after a careful, fact-specific inquiry, that the personal restrictions placed upon Asquith at the halfway house were sufficiently strict that his transfer there did not constitute a release from "institutional confinement." *Id*. at 410-11. Asquith failed to show he had a protected liberty interest in the program, not because it was a form of non-parole prerelease, but because the program never entailed an actual release from institutional confinement. *Id*. at 411 (citing *Montanye*, 427 U.S. at 242); s*ee also Powell*, 757 F.3d at 344 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("It is not sophistic to attach greater importance to a person's justifiable reliance in *maintaining* his conditional freedom . . . than to his *mere anticipation* or *hope* of freedom.") (quoting *United States ex rel. Bey v. Conn. Bd. of Parole*, 443 F.2d 1079, 1086 (2d Cir.1971)) (internal quotation marks omitted and emphases added)).

Plaintiff claims that the court granted him work-release status which was denied by Defendants.[2] (Compl., ECF No. 3 at 2). Because Plaintiff was never actually *released* under the work release program, there was no change in the conditions of his confinement that could constitute a violation of his due process rights. *See Powell*, 757 F.3d at 342. Similarly, an

---

[2] Apparently Plaintiff was released from the Beaver County Jail after he filed his complaint (see remark dated 6/2/15) but then was re-incarcerated at some point. See ECF No. 18.

analysis under *Asquith* is unnecessary as it is clear that Plaintiff was never released from institutional confinement.

Plaintiff could base his claim on the theory that the court's alleged promise of work release status constitutes a "mutually explicit understanding[ ]," as described in *Perry v. Sindermann*, 408 U.S. 593, 601-03 (1972), that creates a protected liberty interest by reliance, but the Supreme Court rejected the notion that such agreements can create protected liberty interests under a theory of implied contract in *Jago v. Van Curen*. 454 U.S. 14, 17-20 (1981). In *Jago*, the prisoner received a parole agreement informing him that he would be released on parole. *Id*. at 32-33. Six days later, the parole board learned that the prisoner had misrepresented facts during his interview with them and subsequently rescinded its decision to grant him parole. *Id*. at 33. The prisoner filed a mandamus action against the parole board, claiming that the parole agreement he had received constituted the "mutually explicit understanding[ ]" that created the protected liberty interest on which he relied. *Id*. On appeal, the Supreme Court ruled that such understandings could only create protected *property* interests based on principles of contract and labor law and "[s]uch principles do not … so readily lend themselves to determining the existence of constitutionally protected liberty interests." *Id*. at 18 (distinguishing *Sindermann*). The Court found that extending due process protection to implicit agreements like these "would severely restrict the necessary flexibility of prison administrators and parole authorities" and therefore ruled that anticipation of release on parole does not create a protected liberty interest under the Due Process Clause. *Id*. at 18-19, 21.

Where the prisoner in *Jago* had a "legitimate expectation of parole," *Powell*, 757 F.3d at 343, and was still found not to have a protectable liberty interest, the expectations of the Plaintiff in the instant case derive from Plaintiff's own misunderstanding of the proceedings. Plaintiff

6

claims that his work release status was granted by a "court-order," not by jail officials. (Compl. ECF No. 3 at 2). Pennsylvania courts, however, only have the authority to grant *eligibility* for work release. 42 Pa.C.S.A. § 9813(a). 42 Pa.C.S.A. § 9813 also provides that county jail officials have the discretion to "preclude the offender from leaving the county jail" for violations of conditions set by the court or by jail officials or if allowing the prisoner work release would create a risk to "community safety or the orderly and safe management of the jail." *Id*. § 9813(c). While the statute requires that jail officials "notify the court of such action," it imposes no such notice requirement on behalf of the prisoner. *Id*. Thus, Plaintiff is mistaken in believing that he was granted work release in the first place. At best, the court deemed him eligible for work release, but the decision to actually release him was at the discretion of jail officials who determined instead to keep him in institutional confinement. Even if the Plaintiff's anticipation of work release could create a protectable liberty interest, it was assumed on erroneous grounds. *See Evans v. Secretary Pa. Dep't of Corr.*, 645 F.3d 650, 664-65 (3d Cir. 2011) ("If there is no protected liberty interest in anticipated parole, we think it stands to reason that there is likewise no protected liberty interest in the expectation of release on an erroneously calculated release date.")

STATE-CREATED LIBERTY INTEREST

In *Sandin v. Conner*, the Supreme Court confirmed that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. 515 U.S. at 483-84. These state-created interests:

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

7

*Id*. at 484 (citations omitted).

The hardship imposed on Plaintiff by the Defendants' denial of his believed work release status was his continued confinement in the Butler County Jail in accordance with his sentence. Denial of prerelease status, resulting in the continuation of institutional confinement as per the inmate's sentence, has been found not to constitute an "atypical or significant hardship." *Powell*, 757 F.3d at 344 (citing *Asquith*, 186 F.3d at 412 and *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996)).

The *Powell* court also rejected the theory that granting a prisoner prerelease status creates a "quantum of liberty" protectable under the Due Process Clause. *Id*. at 344-46. Under that theory, established by *United States ex rel. Flores v. Cuyler*, a prisoner's eligibility for prerelease status "represent[s] some quantum of liberty, and though the quantum may [be] small, it [is] entitled to due process protection." 511 F. Supp 386, 390 (E.D. Pa. 1981).

The *Flores* decision relied on *Winsett v. McGinnes*, where the Third Circuit determined that a discretionary program such as work release could give rise to a protectable liberty interest based on the consistent application of the criteria for the program, 617 F.2d 996, 1007 (3d Cir. 1980). This decision in turn relied upon the "case-by-case" inquiry for State-created liberty interests established by *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*. 442 U.S. 1, 12 (1979).

However, the case-by-case approach was abandoned when *Sandin* reestablished prior due process principles, creating the "atypical and significant hardship" standard for State-created liberty interests. 515 U.S. at 481-82. The Court found that providing due process protection for eligibility to discretionary programs "create[d] disincentives for States to codify prison management procedures" and "led to the involvement of federal courts in the day-to-day

8

management of prisons." *Id*. at 482. "Because *Winsett*—and by extension, *Flores*—rested on *Greenholtz's* now-discredited approach, it, too, cannot stand." *Powell*, 757 F.3d at 346.

Even assuming *arguendo* that *Flores* was still good law, the prisoner in that case had actually been approved for and released under the prison's work release program. *Flores*, 511 F. Supp at 388. Plaintiff here was never actually released from institutional confinement and, as discussed above, was only given *eligibility* for work release status which was then lawfully denied by Butler County Jail officials.

After a careful reading of the averments of the Complaint, it is clear that any attempt by Plaintiff to amend his claim would be futile as a matter of law.[3]

III. **<u>CONCLUSION</u>**

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss (ECF No. 13) filed by Defendants be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

---

[3] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

Dated: September 15, 2015                                   BY THE COURT:

                                                            _____
                                                            LISA PUPO LENIHAN
                                                            U.S. Magistrate Judge

cc:     H. Jerome Raines, Sr.
        Beaver County Jail
        6000 Woodlawn Boulevard
        Aliquippa, PA 15001

        H. Jerome Raines, Sr.
        860 Grove Ave.
        New Brighton, PA 15066

        All Counsel of Record
        Via Electronic Filing